## ASSESSMENTS AS TO LOTS ABUTTING ON TWO STREETS.

### FRIDMAN ET AL V. VILLAGE OF NORWOOD.

#### Decided, December 1, 1902.

1. In fixing the amount of a street assessment against a lot which abuts on a street on both sides, the lot must be treated as having but one front, and the principle of the Haviland case applies.
2. Fifteen per cent. ($10,000) was retained for five years from the contract price for the improvement of a street. *Held,* that this sum represents guaranty for quality of work performed, and costs of maintenance and repairs during the five year period; that the first element may be included in the assessment against the property, but the second element can not be included; and that, following the rule in a large majority of similar contracts where the guaranty fund is fixed at ten per cent. for two years, the proportion which may be properly designated in this case as for guaranty is $2,666.66. 22 C. C. followed and approved.
3. Whatever of premium or surplus is yielded from the sale of bonds by a municipality for payment of a street improvement should be credited back on the assessments of those who have the principal and interest of the debt to pay.
4. A lot should be assessed upon its actual abutting front feet, notwithstanding its sides may not be at right angles to the street improved.

JELKE, J.; SWING, J., and GIFFEN, J., concur.

Mr. Brengleman's lot abuts 73.43 feet on Carthage avenue. It has but one front, that of 68.44 feet on the Montgomery pike.

Under the Haviland case an assessment by the front foot must have regard to the real front of the property. We see no reason why the principle or fiction of that case should not apply equally to the rear as to the side of a lot. Sixty-eight and forty-four hundredths feet on Carthage avenue can be assessed. 50 O. S., 471.

*Advertising.*—The advertising in the *Times-Star* and *Post* in the matter of the improvement was approved by this court in the case of *Davis* v. *Norwood,* affirmed by the Supreme Court. 50 O. S., 716.

As to the defense that the Brengelman lot has not been benefited, we find that it has.

Is the fifteen per cent. retained for five years for repairs and maintenance, or for guaranty on the part of the contractor as to the quality of his work?

We are thoroughly in accord with the principle of the *McGlynn* v. *Toledo* case, 22 C. C., 34-48. If it is a guaranty it is properly a part of the original contract and is not deductible from the assessment; if it is for maintenance and repairs it should not be added into the assessment and can not be assessed against the abutting property.

In the case at bar what is it in fact? The most perfectly constructed macadam surface will not wear five years; it will hardly wear one year without mending. The contractor can hardly be considered to have guaranteed the impossible.

Again, fifteen per cent. is an unusually large percentage to retain for guaranty merely. We have no doubt that both ideas were present in the minds of council and the contractor. We feel sure that some of the fifteen per cent. was for maintenance and the repair of the inevitable wear and tear which must begin on a macadam street as soon as open to travel. It goes without saying that the better the job the fewer the repairs.

On the evidence before us we can not measure or divide the percentage retained between the two purposes. The presence, however, of the unlawful element in the fifteen per cent. so vitiates it that the burden is on the village, if expert witnesses can be had to enable the court to divide it with reasonable certainty, to furnish such evidence.

Damages paid to abutting property owners for the appropriation of property, property rights and change of grade and the cost of excavation occasioned by change of the grade, can not be assessed back upon the abutting property. *Thale* v. *City, Court Index,* February 4, 1902; *Dayton* v. *Bauman,* 66 O. S., 379; *C. L. & N. Ry.* v. *Cincinnati,* 62 O. S., 465.

*As to the premium on bonds.*—The law authorizes the corporation to borrow upon credit money sufficient to pay the estimated cost and expense of the improvement. The annual installments are figured so as to ultimately pay these bonds and the interest thereon. These installments differ in this respect from install-

ments of sewer assessments on which the law fixes the rate of interest on the unpaid portions thereof. In these street assessments, if levied correctly according to principle and theory, the amount borrowed upon which interest is paid and which is ultimately repaid, should be exactly recovered from the assessments, no more and no less.

Practically it is impossible to figure this exactly in advance. But under the limitation against selling below par, too little need never be borrowed and probably never is. There is always an excess or surplus or premium on account of the good credit of the municipality. But it is not part of the municipal functions to do a banking business, to finance or underwrite improvements of this nature at a profit. To even things up, whatever of a premium or surplus is yielded should be credited back on the assessments of those who have the principal and interest of the debt to pay.

*As to front feet of lot abutting at an angle not a right angle.*— Assessment by the front foot is but a rule-of-thumb resorted to for the measurement of special benefits upon which the whole right to assess must rest. Where this rule has been in good faith adopted the courts have stuck to the literalism of the term even to the extent of resorting to a legal fiction to preserve it, as in the Haviland case. This being so, we see no reason why the front feet of a lot, the sides of which are not at right angles to the road, should be measured by the distance between the sides, or in any other manner than by actual abutting front feet.

The above principles are applicable to the Brengelman, Fridman, Cadwallader, Chappel and Potter cases.

Subsequently the village offered certain evidence and there was a partial re-hearing, after which the court said:

Upon further consideration we continue satisfied with our opinion.

We have since heard evidence offered by the village of Norwood in an effort to apportion $10,000 held by it between the two purposes of guaranty on the one hand and maintenance and repairs on the other.

The evidence is meager and not very satisfactory. However, in our endeavor to find what is equitable and fair between the village

and the property owners, and remembering that we are to be guided by what commends itself to the chancellor's conscience rather than by a strict measure of legal proof, we have concluded to make the division on the following principle:

We find that in the large majority of contracts of this kind a guaranty fund of ten per cent. for two years is provided, and that these contracts have been sustained on the ground that such fund was an indemnity provided against structural defects and bad material and workmanship.

Adopting this as a reasonable reserve for guaranty, and scaling down the $10,000 to such reserve, we find $2,666.66 is the proper amount to be set aside for guaranty, and the balance must have been for repairs and maintenance, and is, therefore, invalid.

This issue as between an abutting property owner subject to an assessment and the village of Norwood was not submitted in the case of *Davis* v. *Norwood,* which was a suit by a taxpayer, conducted for the benefit of the contractor, and is not adjudicated here. Neither do we want anything here said to be construed as passing upon any of the issues pending elsewhere between the village and the contractor.

On the question as to street intersections we are, of course, controlled by the holding of the Supreme Court in *Creighton* v. *Scott,* 14 O. S., 438, and understand that counsel for plaintiffs only hope to prevail on this point by persuading the Supreme Court to change this, its former holding.

Decrees accordingly.

*A. L. Herrlinger, Wm. E. Bundy, L. C. Black, W. M. Fridman, W. W. Symmes,* for plaintiffs.

*Wm. R. Collins,* for defendant.